GEORGE SPURCK *et al.,* Plaintiffs in Error, *v.* GEORGE CROOK *et al.,* Defendants in Error.

### ERROR TO TAZEWELL.

Arbitrators may be examined as witnesses to prove that no evidence was given on a particular subject—that certain matters were or were not examined by him—or that there is a mistake in the award ; also, as to the time when, and circumstances under which, an award was made, and what transpired at the hearing.

An award improperly obtained may be set aside.

A married woman who has joined her husband in a contract, or who has contracted without her husband, will not be made to convey her real estate, nor does she, in that way, release her dower; and joining with her husband in an agreement to arbitrate does not change her rights. She cannot be made to perform an award.

Spurck et al. *v.* Crook et al.

THIS was a bill in chancery, filed by plaintiffs in error, alleging that, on second day of November, 1846, George Spurck and George A. Crook entered into copartnership in the mercantile and produce business, in the name of George A. Crook, under articles of copartnership of that date, providing that all personal and real estate, or any stock, or anything else purchased in Peoria, to be in name of said Crook, and that upon dissolution, an invoice of all stock, real estate and personal, to be equally divided, after making out each party's account, debt and credit, and then Crook to draw out the amount of his capital over and above Spurck, with six per cent. interest on the same; each party to charge himself with what stock he may draw out of the concern at retail prices, except lot one, block three, in Water street, being property purchased of Chrisman: which articles were signed by both parties, with their seals. And immediately under the signatures and seals:

The said Spurck, so long as the copartnership exists as above, is to pay one-half of the interest on the cost of the said property, now occupied by me and paid for out of my individual money, for the sole benefit of my wife and children.

G. A. CROOK.

It is mutually agreed and understood by us both that the said G. A. Crook, on the date mentioned, had in the concern $1,300, and said Spurck had no capital.

G. A. CROOK,
GEORGE SPURCK.

That they entered into business in Peoria, and so remained until June 15, 1848, when they dissolved; that during said copartnership, they purchased from H. O. Merriman lot three, in block twelve, Peoria, for $450, and took a bond to George A. Crook; that said lot was purchased for the partnership concern; and that complainant Spurck paid of the same $225 for his half of said lot, and Crook paid the remainder.

That said partnership, during its existence, made a clear profit of $6,000, which Crook acknowledged; that Spurck put in said concern $2,000; that upon the dissolution, they accounted together and settled amicably, and agreed that Crook should retain all the capital stock and profits. And Crook executed and gave to Spurck the following agreement:

*Peoria, June* 15, 1848.

I this day have agreed to give Ann L. Spurck a good and sufficient deed to eighty acres of land, known and described as the De Groff land (meaning the half quarter aforesaid). I also do make to the said Ann L. Spurck a good warranty deed to the north half of lot No. 3, in block 12, purchased of H. O. Merriman, and to finish off the house now being erected on said lot complete, except the plastering, according to the contract with the carpenters. Also, to give to George Spurck my note for five hundred dollars, payable in cash, notes, due bills or book

accounts, as may best suit my convenience. To all the above, and the faithful performance of the same, I do hereby bind myself, my heirs and assigns, as witness my hand and seal this day. Said Crook obligating himself to pay all debts, dues and demands against said concern. G. A. CROOK. [SEAL.]

Which agreement was declared to be full and final settlement of said copartnership by said Crook.

That Merriman has since conveyed said lot to Crook, in compliance with his bond; that Crook refuses to make the deed and pay the $500.

That complainants, Spurck and wife, have conveyed the eighty acres called the De Groff farm to complainant, Thomas S. Dobbins, which bill prays for conveyance, etc.

The answer of Crook admits the partnership, and time of its dissolution, 15th June, 1848, and says that, on that settlement, Spurck gave a receipt in full to respondent; denies purchase of lot from Merriman for partnership; denies that Spurck paid anything on lot; that the lot was purchased by respondent, with money of Martha M., his wife; that the south-westerly half of the lot was re-sold to Merriman, and the north-easterly half conveyed to William Spurck, in trust for Martha M. Crook, January 24, 1849; and that Martha is the owner of the lot, and that respondent has no control over the same. Denies that the concern cleared $6,000, and denies that Spurck put into said concern any money; denies the contract or agreement set out in bill on settlement of said partnership; states that the De Groff farm also belongs to his wife, the title being held in trust under a deed from George Spurck to Hart P. Anchor, dated February 4, 1851. Knows nothing of the deed from Spurck and wife to Dobbins.

That on the 19th September, 1848, Spurck and wife filed their bill in Peoria Circuit Court against respondent and Merriman, and on 28th April, 1851, their amended bill against respondents, Martha M. Crook, William Spurck and Hart P. Anchor, in which the complainants complain of the same identical grievances as in this bill contained; that on the 9th March, 1852, and while said former bill was pending, the said parties submitted to Daniel O'Keefe all suits, litigations and differences between them, as sole arbitrator, whose decision was to be final and conclusive; that O'Keefe took upon himself the burden of the said arbitration, and April 15, 1852, made his award, whereby the said matters were fully settled, and that he awarded that the De Groff land should be conveyed by Crook and wife to Thomas Hughes, trustee for Ann L. Spurck, but in the award the arbitrator made a mistake in describing the land, as being the east half of N. E. qr. 25, 9 N., 7 E., instead of N. half of S. W. 25, 9 N., 7 E.; that in that part of said award in which

it is stated that Crook and wife are entitled to retain possession, and without hindrance of Spurck and wife, of house on easterly part of lot three, block twelve, the word north, before the word easterly, was omitted, and the said north-easterly half of said lot three was intended to be awarded to said Crook and wife; that they have been ready to comply with said award.

That on the 27th April, 1852, notice was served on Spurck and wife by Crook, that he had deposited with E. G. Sanger, master in chancery, the deed and notes secured by mortgage, in compliance with said award, to be delivered to Spurck upon his complying with said award. Also, Crook and wife executed to Spurck and wife their release, and gave the same to O. Peters, counsel for Spurck and wife, which release the complainants are notified to produce on hearing; and further offers, if anything is left undone under said award, to do the same at his own cost; insists that the award is in full force, unreserved and binding; that the said suit in chancery between the parties was, by agreement, dismissed March 12, 1852, and the same is insisted upon as a bar to this suit.

May 10, 1854. Leave was given to complainants to file an amended and supplemental bill, which was filed May 10, 1854, wherein the complainants allege that it was the intention of Spurck and Crook that Spurck should have the north-east half of lot three, and that the description in said agreement as the *northerly* half was a mistake of both parties; that both said lot and the De Groff farm were purchased with partnership funds; that after the settlement of said partnership matters, Crook and Merriman adjusted the lot matter in manner following: Crook conveyed to Merriman the south-west half of the lot, and Merriman conveyed to Crook the north-east half of the lot, and thereby Crook became the holder, in fee, of said north-east half of lot three, and he should have conveyed the same to said complainant, George Spurck, but, on the contrary thereof, Crook conveyed the same to William Spurck, in trust for Martha M. Crook, wife of George A. Crook; that she paid nothing therefor, but the conveyance from G. A. Crook was voluntary, and made to defraud complainants.

That in 1851, there were pending in Peoria Circuit Court a suit in chancery, and certain suits at law, between Spurck and wife and Crook and wife, which were referred to Edward Dickinson, John C. Flanagan and David Maxwell, referees; that said referees made and filed their award in said court, which award was set aside at March term, 1851, because of improper description of said lot three, it being described as northerly half instead of north-easterly half; that pending the reference it was verbally agreed that George Spurck should convey the

DeGroff farm to Hart P. Anchor, so that the same should abide the result of the arbitration; that in pursuance of said agreement, Martha M. Crook did, in writing, request said Spurck to convey said land to said Anchor; that the conveyance was made, in which deed were several trusts, one of which was, that Anchor should convey said 80 acres to Ann L. Spurck, divested of all trusts, which deed defendants are notified to produce; that Anchor made the deed to Ann L. Spurck, and made an exhibit, which deeds were in the hands of the referees, to be delivered to the proper parties, if they should determine in conformity with the terms and provisions of the deeds; an agreement in writing being signed by O. Peters, as counsel for Spurck and wife, and by L. B. Knowlton, as counsel for Crook and wife; that the arbitrators awarded that George Spurck was entitled to the DeGroff farm, and the deeds were delivered accordingly; that the said agreement was made in good faith on complainant's part, and they believe Knowlton had full authority to make the agreement for defendants; that Martha M. did assent to and direct that the arrangement for the deeds should be made; that George A. Crook and Anchor, as trustees for Martha M. Crook, receive the rents of said house on lot three, and refuse to account to complainants; that they have received rents from said house at least $1,200, and the DeGroff farm $500 to $1,000; Crook refused to abide by award of arbitrators, and, on his motion, the award was set aside for the reasons aforesaid. And on the 9th September, 1852, the matters were submitted to Daniel O'Keefe, sole referee, who made his award April 15, 1853; made an exhibit which was never perfected or delivered so as to take effect, for the following reasons:

1st. O'Keefe undertook to determine upon matters not submitted to him. He awarded that Crook and wife should convey the E. half N. E. 25, 9 N., 7 E., to which land neither party had any title or claim.

2nd. O'Keefe undertook to appoint a trustee for Ann L. Spurck, and fix and determine declarations of trust, for which he had no authority.

3rd. Said arbitrator awarded that a suit in favor of Charles Hamilton and George A. Crook should be dismissed, it not appearing that any of the parties, except Crook, had interest therein.

4th. The award was never perfected and delivered.

5th. The award was procured by fraud on part of Crook; that Crook surreptitiously and fraudulently got possession of the agreement of the 15th of June, 1848, from said O'Keefe, before O'Keefe had an opportunity to examine it fully; that after the case was submitted, Crook held private interviews with

O'Keefe, and made false and fraudulent representations to him, by means of which abstracting the agreement and false representations, the arbitrator made an award $3,000 or $4,000 less favorable to complainants than otherwise. That Wm. Spurck also used improper means to influence said O'Keefe in the matter, after the submission.

That O'Keefe was not sworn; that after the matters were fully submitted, Crook, without notice to complainants, introduced before the arbitrator pretended claims and demands, which had long before been settled and discharged; among which were three notes given by Crook and Spurck to B. Fortier, for $320 each, which were allowed by said arbitrator; all of which complainants could have rebutted if they had been informed thereof.

Said arbitrator undertook to determine as to the costs in the former arbitration.

That Crook, pending the arbitration, entered upon the De-Groff tract and removed the fences and improvements, and greatly impaired the same, and that thereby Crook has put it out of his power to fulfill the award.

At time of original settlement, complainants gave to Crook a receipt in full, in consideration of the agreement given by Crook. That the suits were procured to be dismissed by Crook fraudulently. Crook is insolvent.

That the agreement at the time of the dissolution is not in possession of complainants; that it is either in possession of Crook or is lost, and prays leave to prove contents.

Bill concludes with prayer for relief, etc., and for appointment of receiver.

The answer of William Spurck, Martha M. Crook and Hart P. Anchor, filed January 9, 1854, adopts the answer of George A. Crook, except as to the contract of June 15, 1848, of which they know nothing. Admits that the said north-easterly half of said lot three is the proper description thereof, instead of northerly half. Denies that the money for the purchase of said lot was partnership money, but belonged to Martha M. Crook; admits that on 18th January, 1849, Merriman conveyed to George A. Crook, and that the title was vested in him as trustee for Martha M. That Jan. 24, 1849, George A. conveyed to Wm. Spurck, in trust for Martha M. Crook. Admits that certain suits in chancery and at law were pending; that they were referred to arbitrators; that they made and filed their award; that the same was set aside and declared a nullity. Admits that Martha M. Crook did request George Spurck to convey the DeGroff farm to Hart P. Anchor, as trustee for her, but denies any contract to convey said land to Ann L. Spurck.

Admits that arbitrators awarded the land to Ann L. Spurck, but denies authority of Knowlton to make any contract respecting the land.

Admits receipts of rents of house to about $750. Denies fraud in deed from Crook to William Spurck, of house and lot. Admits he has no interest in it except as trustee. That O'Keefe made his award, which was binding. Denies that O'Keefe undertook to decide any matters not submitted, and that he exceeded his authority. Admits mistake in description of the DeGroff farm; that the case of Hamilton *v.* Crook was one of the suits submitted to O'Keefe; that George Spurck was party in interest. Denies all allegations of fraud in obtaining award. Denies the private interviews, representations, etc., of both Crook and William Spurck. Don't know whether O'Keefe was sworn or not, and that it is immaterial. Admits presentation of notes for allowance. Don't know whether they were allowed or not, but says they were just. Admits that Martha M. Crook is a married woman, but insists that because she is so, she is not bound to violate her contract. Denies that Crook has depreciated the DeGroff farm by removal of fences and improvements. Admits that Crook has receipt in full of all demands of Spurck. Denies insolvency.

Replication filed August 10, 1854.

*James McFadden* testified, that Bartholomew Fortier had certain notes of Crook & Spurck, given for part of lots in Bigelow & Underhill's addition to Peoria, which notes were returned to Crook, the trade being annulled: Crook receiving $100 from affiant, and Fortier to give up the lots.

*Daniel O'Keefe.* Was arbitrator between the parties. In April, 1852, the parties came before me with their papers and claims. I made out award, and required the payment of $30 before delivery — $15 from each of the parties. Spurck was ready to pay; Crook refused. Knowlton took a copy of the award, agreeing not to give it to Crook. Peters paid me $30 and took a copy of the award. Crook and Spurck appeared before me and submitted their papers and claims, and among them an agreement, June 15, 1848, a copy of which is attached to the deposition, and the same above referred to as the agreement of Crook to convey to Ann L. Spurck the said eighty acres and the said half lot three, which agreement was left with witness by Spurck, and which was taken from witness, as he was well satisfied, by Crook, without leave or consent of witness, and that he did not have said paper before him at time of making the award, thereby causing him to make a very different award from what he should have made if the paper been in his possession. And in consequence of the loss of that paper I awarded

the house and lot to Martha M. Crook, when otherwise I would have awarded it to Ann L. Spurck. I searched at the time for the paper, but could not find it. I charged Crook with taking the paper in the absence of witness. After the parties had made their statements, Crook presented two notes signed by Spurck, which were allowed in the award; also there were three notes of $320 each, given by Crook and Spurck to B. Fortier, from which Crook had erased his name, and I allowed one-half of the notes against Spurck, and in favor of Crook. Crook furnished me the number of the land. I had frequent interviews with William Spurck by consent of both parties, and I made up the award upon his statements, thinking he knew more about the matter than I. He was not sworn. I was not sworn as arbitrator.

*A. L. Merriman* testified, that George A. Crook and George Spurck were doing business as partners under the name of George A. Crook. The lot three in block twelve, was bought of brother of witness, in name of George A. Crook. Both Crook and Spurck negotiated for the lot, and as his recollection was, they gave their joint notes for the purchase money, $450. Spurck paid on the purchase of the lot, March 8, 1848, $25, and May 8, 1848, $200, which was all that was paid on the purchase. But subsequently, H. O. Merriman purchased the south-westerly half of the lot, with the building, and applied the balance of purchase money in that manner. Mrs. Crook never paid any of the purchase money, nor was her name mentioned in the original purchase. My brother paid Crook for the south-westerly half of said lot $1,100, including the balance of the purchase money due on the lot. The annual rent of the house on the N. E. half of the lot worth from $150 to $175.

*E. Dickinson.* Was arbitrator with David Maxwell and J. C. Flanagan, in January and February, 1851. Think there was a paper shown us then, in substance an agreement to convey half lot three and the DeGroff farm to Ann L. Spurck.

*Thomas Hughes.* Crook and Spurck were partners. At some period between 20th and 25th June, 1848, in a conversation with Crook, I asked him if he and Spurck had settled in full in such a manner satisfactory to both parties. He said he had understood him to mean everything between them was settled, both of a partnership and of a private character. Have seen an agreement between Crook and Spurck. Think that set out in the original bill in this case is a copy thereof. Witness went with Spurck to see Crook, and he demanded of Crook deed for part of the lot referred to in the agreement. Crook told him to go to Mr. Merriman and get his deed; that he had

made arrangement with Merriman to let him have the same. We then went to Merriman's office for the deed, and Merriman told us there was no deed for Mr. Spurck; that Crook had made no such arrangement. In May, 1848, Crook told me that they had cleared $6,000, including real estate and all their partnership business.

Defendants moved to suppress depositions of Daniel O'Keefe, David Maxwell, A. L. Merriman and E. Dickinson, for reasons following:

1st. No sufficient notice.

2nd. Because the depositions are improper and irrelevant.

To O'Keefe's deposition:

Because the whole object of his deposition is to impeach his own award, which the law does not permit.

Upon hearing of which motion, the court overruled the motion as to all except O'Keefe, and suppressed the deposition of O'Keefe. To the decision of the court in suppressing said deposition the complainants excepted.

Upon hearing, *Hart P. Anchor* testified. During pending of cause before O'Keefe as arbitrator, witness had conversation with Crook. Asked Crook if O'Keefe had decided the case yet. He said no, he has not. He has lost one important paper or agreement. I asked him if it was likely he would again find it. No, says he, he will never find it again. He said this in a sneering, laughing manner. On same day he said, that house will be awarded to Mrs. Crook. Says I, don't be too sure of it; because Major O'Keefe is a man I place very little confidence in. Says he, I have made it all right with O'Keefe. I have got it all fixed. That house will go to my wife. He can't make the award any other way. Speaking of the loss of the paper, he said, they have lost the important paper, and have nothing against me. I asked him if the paper was recorded. He said, no, sir, it is not. They have nothing to show against me. On cross-examination, I told Dobbins this about eight or ten months ago, after I had a quarrel with Crook. I did not intend to tell Dobbins or any one else if Crook had not acted the scoundrel with me. I believed when Crook told me that, he had stolen the paper. I waited for four years before I told of it. Crook always tells lies, never tells the truth. Still I believed what he told me about loss of paper.

March 20th, 1858. The court rendered a decree dismissing the bill, discharging the receiver, and ordering all moneys by him collected to be paid to the trustee of Martha M. Crook, from which decree the complainants took an appeal to this court.

WEAD & WILLIAMSON, for Plaintiffs in Error.

N. H. PURPLE, for Defendants in Error.

WALKER, J. It appears from the bill, answers and evidence in this case, that George Spurck and George A. Crook, on the second day of November, 1846, entered into copartnership in the mercantile and produce business, in the city of Peoria, in the name of George A. Crook, by articles of agreement of that date; that by the terms of the agreement, all property, both real and personal, should be purchased in the name of Crook, and upon a dissolution, all property to be equally divided, after paying Crook his capital, with six per cent. interest, and deducting each partner's account. Spurck to pay one-half of the interest on the cost of the property occupied by Crook, and that Crook on that date, had $1,300, and Spurck no capital in the concern. That they remained in business until the fifteenth day of June, 1848, when a dissolution and settlement took place. That during the continuance of the partnership, they purchased of H. O. Merriman, lot three, in block twelve, at $450, for which they gave their joint notes; Spurck paid on the purchase $225, and the balance of the purchase money was discharged by re-selling to Merriman the south-easterly half of the lot, and he paid Crook for it, including the balance of the purchase money unpaid, $1,100. That this purchase was in the name of Crook, and at the time of the purchase, nothing was said about its being for the wife of Crook, or being paid for with her money. That they purchased of Alexander De Groff the north half of the south-west quarter of section twenty-five, in township nine north, in range seven, east of the fourth principal meridian. That Spurck made the purchase at four hundred dollars; that at the time of. the purchase he paid $64, and the balance was received in goods in their store, from both of them, at sundry times, and the deeds were made to Crook for both tracts. That on the settlement, Crook gave an instrument in writing, binding himself to convey each of these tracts to Ann L. Spurck, by good and sufficient deed, and to pay Spurck, in notes or accounts, five hundred dollars, which was declared to be a full and final settlement. That Spurck and wife had conveyed the eighty acre tract to Thomas S. Dobbins. That in September, 1848, Spurck and wife filed a bill in chancery, in the Peoria Circuit Court, against Martha M. Crook, wife of George A. Crook, William Spurck and Hart P. Anchor, to compel a conveyance of these premises. That on the 9th day of March, 1852, while that bill was still pending, the parties submitted to the arbitrament and award of Daniel O'Keefe, all suits and differences be-

tween them, whose decision was to be final. The deed of submission was signed and sealed by Spurck and wife, and Crook and wife. That O'Keefe, in 'April, 1852, made his award that Crook and wife should convey the eighty acre tract to Thomas Hughes, as trustee for Ann L. Spurck, but misdescribed the land, naming it the E. half N. E. 25, 9 N., 7 E., instead of the N. half S. W. 25, 9 N., 7 E. That Crook and wife should hold the house on lot three, in block twelve; and that the parties should release all claims up to time of delivering the award; and awarded the payment of costs of the arbitration and former litigation. It further appears, that the agreement for the conveyance by Crook to Ann L. Spurck was lost, after the hearing and before the making out the award for delivery. The deposition of O'Keefe was taken, and he swore that the paper was lost, and that his award would have been different if it had been present. That after the parties were heard on the trial before him, Crook, without any notice to Spurck, presented three notes, given by Spurck and Crook to B. Fortier, for $320 each, one-half of which he allowed against Spurck. It appears from the evidence of McFadden, that these notes had been given for the purchase of land from Fortier, and the contract rescinded and the notes returned to Crook, with $100, as the consideration for canceling that contract. Anchor testifies, that while the matter was pending before the arbitrator, he had a conversation with Crook, who said O'Keefe had lost one important paper or agreement; he said he would never find it again, (said this with a sneering laugh.) He said that the house would be awarded to Crook, and that he had made it all right with O'Keefe; had got it fixed with O'Keefe; that the house would go to his wife; that he could not make the award any other way. That they had lost that important paper, and had nothing against him. He said it had not been recorded; they had nothing to show against him. The court below suppressed the deposition of O'Keefe, and on the hearing, dismissed the bill, discharged the receiver, and ordered him to pay moneys collected by him as rents, to the trustee of Martha M. Crook. And from that decree the complainants appeal to this court.

It is a general rule, that judges, arbitrators and jurors are not required or even permitted to testify in regard to the grounds of their determination, and judges are not even allowed to testify in regard to matters that have come before them on trial; but arbitrators may be examined to prove that no evidence was given on a particular subject, or that certain matters were or were not examined, or acted upon by them, or that there is a mistake in the award; and also, as to the time and circumstances under which the award was made, and as to any facts which transpired

28

at the hearing. 3 Greenl. Ev., sec. 78; 1 Rawle, 304; 5 Taunt. 454; 2 S. & R. 286, and authorities cited. The very fact that awards can only be impeached for fraud, partiality, or gross mistake of law or fact, may be, and probably is, the reason why these exceptions are made. If the arbitrator were prohibited from giving evidence of what transpired before him, as to what evidence he heard, what was or was not acted upon by him, and the circumstances and acts of the parties, the grossest fraud, corruption or partiality might prevail, and its victim have no relief. While a juror cannot be heard, to impeach his verdict, yet he may unquestionably testify as to what the parties did and said upon the trial, and also as to any improper practices to corrupt the jury in its action, and the effect it may have had upon the jury in their decision. *Metcalf* v. *Dean*, Cro. Eliz. 189; *Knight* v. *Inhabitants of Freeport*, 13 Mass. 218. In the case of *Ritchie* v. *Holbrook*, 7 Serg. & Rawle, 458, on an application for a new trial, it was objected, that the court should not receive an affidavit of a juror, showing improper conduct of a party to influence their verdict. TILGHMAN, C. J., says: "But it never has been, and I trust never will be doubted, that the affidavit of a juror shall not be received to prove misbehavior of one of the parties to the suit. The holding conversations with jurors after they are sworn, is a practice against which the court should set its face resolutely, and put it down at once." The very necessity of the thing makes it proper. When men engage in fraud and corruption, it is not in the face of the public— they never call witnesses to attest such practices, but, on the contrary, seek, by every means in their power, to prevent detection. From the nature of the thing, none can know it but the juror or arbitrator, and the person using the means of corruption. To exclude the juror, or arbitrator, would be to prevent the party from showing the great injustice and wrong he may have sustained. If, in exposing the conduct of the party, the juror or arbitrator appears in a light that is not creditable to himself, it is the fruit of his conduct, and he must abide it, as any one else who may, in the advancement of justice, have to expose his own disgrace. We think that every consideration which applies to compelling a juror to testify to the acts of corruption or misconduct of the parties, applies with equal force to arbitrators. No reason is perceived for making a distinction. This would, therefore, have entitled the deposition of the arbitrator, so far as it relates to Crook's furnishing him with the notes after the hearing was closed, and without the consent of Spurck, to admission. The cases before referred to fully sustain the doctrine, that if either party furnish the jury with evidence after the jury have heard the case, and the verdict

Spurck et al. *v.* Crook et al.

shall be in his favor, that it should be set aside, as the court will presume it had an improper effect in producing the result. And so it will be, if the party converses with a jury, and they find in his favor; and the same rule should equally prevail with an arbitrator. It may be impossible for him to determine what influence it had on his mind in coming to a conclusion; and however desirable it may be, that there shall be an end to litigation, it is equally important that parties should know that they cannot profit by attempting to corrupt the streams of justice.

But even if O'Keefe's evidence were excluded, the evidence of Anchor remains unimpeached, and shows quite enough to set aside the award. He testifies, that before O'Keefe announced his award, Crook informed him that an important paper was lost; that it would never be found; that it was not recorded; that he had fixed it with O'Keefe, and that his wife would get the lot. Does not the fact that he knew the result before the award was announced, when coupled with the fact that he had fixed it with the arbitrator, carry conviction to every mind, that he had resorted to unjustifiable means to produce that result? And when we remember that the arbitrator testifies that he furnished him with notes not produced on the trial, it is irresistible. We are, therefore, of the opinion, that for this reason alone the award should be set aside. But, independent of that, there is another ground that is fatal. By the rules of the common law, as it has prevailed in England and in the various States, all contracts by and of a married woman are void; and while the husband may dispose of the chattel property of the wife, he has no power to dispose of her realty. That could be done alone by the common law, by a fine suffered in open court, when she was examined by the court, in the absence of her husband, as to whether she acted without his constraint. By legislative enactment in most, if not all, of the States of the Union, she may convey her real estate by joining her husband in a deed, and acknowledging it in the manner prescribed, before a proper officer. And in all the courts where the question has arisen, they have refused to compel her to convey her land or release her dower, on any contract she alone, or together with her husband, may have made.

And it is provided by the 14th section of chapter 34, entitled Dower, R. S. 1845, p. 200, that " No act, deed or conveyance, performed or executed by the husband without the assent of his wife, evinced by the acknowledgment thereof in the manner required by law, shall pass the estate of a married woman; and no judgment or decree, confessed or recovered, against him, and no laches, default, covin, forfeiture or crime of the husband shall prejudice the right of his wife to her dower or jointure, or

preclude her from the recovery thereof, if otherwise entitled thereto." This provision of the statute fully recognizes the principle of the common law. It then remains to determine whether the submission of a question affecting her right to real estate to arbitration is an exception to this rule. It is laid down, in Watson on Arbitrations, p. 43, that, as the deeds and other contracts of a married woman are entirely void, she can-. not bind herself to perform an award. The courts of equity, in cases where married women have joined with their husbands to arbitrate the price to be paid on an agreement to sell the real estate of the wife, have refused a specific performance. *Emery* v. *Wase*, 5 Ves. R. 846.

Judge Tucker, in his Commentaries, lays down the doctrine, that, " Generally, whoever can contract may submit a dispute to arbitration. But those who cannot contract are incapable of such submission, for it is a contract." 6 Munf. R. 453. Yet a husband may submit for his wife anything which he has a right to dispose of—Stiles R. 356 ; 5 Ves. R. 846—but nothing else.

The obligation of Crook, gave to Ann S. Spurck a complete equitable title ; and as courts of equity protect persons in their legal rights, they will not compel a married woman to part with her equitable title against her consent, any more than if it was a legal title. The fact that the claim was in litigation could not change her rights. If it could, she might, in every instance, be compelled to convey her land. It would only be necessary for her husband to make a sale, let a suit be brought, and submit it to arbitration, and get an award for its conveyance, to deprive her of her property. This cannot be tolerated by courts. Parties cannot be permitted to do, by indirection, that which they are prohibited from doing directly. We are, therefore, for these reasons, of the opinion, that the award was not binding on the complainants, and that the decree of the court below should be reversed, and the cause remanded.

*Decree reversed.*