## CRAFT *v.* THOMPSON.

A demurrer to a bill in equity admits the truth of the facts stated in the bill, so far as they are relevant and are well pleaded; but it does not admit the conclusions of law drawn therefrom, although they are also alleged in the bill.

A general award cannot be impeached collaterally, or by evidence *aliunde*, in the absence of fraud or misbehavior by the referees, unless, having undertaken to decide strictly according to the rules of law, they have mistaken the law; or, in regard to matters of fact, a material mistake is apparent upon the face of the award, or else a suggestion by the referees themselves of a mistake of fact not apparent upon the face of the award, but still in their own view material to its validity,—in which cases, although the mistake suggested by the referees is made out only by extrinsic evidence, courts of equity will grant relief.

Undue bias or partiality on the part of the arbitrators is equivalent to fraud and misbehavior, for the purpose of impeaching their award.

A court of equity will not interfere in behalf of a party whose defeat in a submission before arbitrators is in any essential degree attributable to his own negligence. But any fact which clearly proves it to be against conscience to execute a judgment at law, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will authorize a court of equity to interfere by injunction.

A court of equity will set aside an award obtained by the perjury of a party to the submission.

A demurrer to a bill in which such perjury is distinctly and specifically alleged, is, for the purposes required by the demurrer, equivalent to the party's own confession of the crime, or to competent evidence of his legal conviction thereof.

As a general rule (to which this case forms no exception), where a demurrer is general to the whole bill, and there is any part of the bill which the defendant should be required to answer, the demurrer, being entire, must be overruled.

In Equity. The bill, by Samuel Craft against Noble Thompson, alleges, in substance, that prior to the fourteenth day of April, 1870, to wit, on the first day of May, A. D. 1867, the said Samuel Craft and said Noble Thompson entered into an arrangement for the purchase and sale of cattle and horses for their mutual benefit and profit and on their joint account; that, in pursuance of said arrangement, they did, respectively, make various purchases and sales of cattle and horses for

their mutual benefit and on their joint account, amounting to a large · sum, to wit, to the sum of $7,000 ; that on said fourteenth day of April, 1870, certain differences. relative to said purchases and sales, and the moneys paid out and received by them, respectively, on account of said purchases and sales, having arisen between the said Noble Thompson and Samuel Craft, they did then and there agree to refer and submit all matters in difference between them to the final arbitrament and determination of William P. Benton, Edward J. Durant, and John Wood, giving mutual bonds to abide by the award of said arbitrators; that in pursuance of said submission the said Thompson and Craft, on the said fourteenth day of April, 1870, at said Lebanon, met the said referees before named, and then and there laid before and submitted to them their several claims, demands, and allegations, for their award, arbitrament, and final determination ; that on the 16th day of said April, the said Edward J. Durant and John Wood, two of said referees, did, under their hands, make their award in writing, that there is a balance due on the above submission to the above named Noble Thompson of $1,500, costs of arbitration, to be equally paid by the parties; and that, to avoid the immediate commencement of a suit to enforce the payment of said award, which the attorney of said Thompson then and there threatened and assured the said Craft he would do, unless he, the said Craft, would immediately, without any delay, give his note for the amount of said award, and to avoid the great loss and expense to which he would thereby be subject, and being himself without any counsel learned in the law to aid or advise him relative. to his rights or interest, he did, then and there, on said 16th day of April, 1870, execute and deliver to said Thompson his note of that date, whereby he promised to pay the said Thompson fifteen hundred dollars ninety days from date, with interest annually ; that on the 27th day of September, 1870, the said Noble Thompson caused a suit to be commenced on said note, and a writ to be sued out, returnable to the county court then next to be held at Woodstock, within and for the county of Windsor, in the State of Vermont, on the first Tuesday of December then next, and on the 28th day of said September, at Brattleborough, in the county of Windham in said State of Vermont, by virtue of said writ, caused the body of said Craft to be arrested, whereby he was compelled to give bail for his appearance at said county court, and to respond to any judgment that might there be rendered against him in said suit on said note ; that he is instructed and verily believes that he has at law no answer to said note given for said award, and is in manifest danger of a judgment thereon against him.

And the plaintiff says that the said award of the said Edward J. Durant and John Wood, two of said referees, was obtained through the inadvertence, misapprehension, mistake, or undue bias or partiality of the two said referees who made the same, and against the earnest remonstrance of the said William P. Benton, the other member of said board of referees ; and that the said Thompson, falsely and knowingly,.

at the hearing before said referees, testified, upon his oath, that he, the said Thompson, had, on or about the 28th day of September, 1867, paid to one Sylvester B. Alexander, for cattle bought by him on account of said arrangement between said Thompson and Craft, the sum of $265, from his own private funds, and claimed to have that sum allowed to him by said referees; that he, the said Craft, having, before the day of the hearing, lost his memorandum book, in which he had made the entries of all payments and receipts by him on account of said arrangement between the said Thompson and himself, was then and there unable to furnish definite and positive evidence to contradict the statement of the said Thompson, though he did then and there deny the correctness thereof, and testified that he paid said sum to said Alexander himself; that since said award, and the execution of said note to said Thompson, he has been able to find the said Alexander, and has been informed by him that he well knows and remembers that he, the said Craft, did make the payment of said sum of $265, on or about the 7th day of October, 1867, to him, the said Alexander, and that the said Thompson did not, on said 28th day of September, 1867, or at any other time, pay to him, the said Alexander, said sum of $265, or any part thereof, and that he, the said Alexander, is ready so to testify; that at said hearing, before said referees, the said Thompson falsely and knowingly testified, upon his oath, that from his own private funds he did, on or about the 4th day of October, 1867, pay to one Elihu Hyde the sum of $245 for certain cattle bought on account of said arrangement between the said Thompson and Craft, and claimed to have the same allowed to him by the said referees; that, by reason of the above mentioned loss of his memorandum book, the said Craft was unable to furnish evidence of the fact that he, the said Craft, had made the payment of said sum of $245 to the said Hyde, other than his own statement of the fact; but that since said award and the execution of said note he has discovered the fact that the said Hyde well knows, and is ready to testify on oath, that the said Craft did make said payment of said sum of $245 to him, the said Hyde, and that the said Thompson did not at any time pay to him, the said Hyde, any part thereof; that at said hearing before said referees the said Thompson claimed to be allowed the sum of $505 on account of a certain promissory note executed by the said Thompson, and the said Craft as his surety, to the Dartmouth National Bank, on or about the second day of September, 1867, for the sum of $600, and that, through the inadvertence, misapprehension, mistake, or undue bias or partiality of said referees, the said sum of $505, after deducting $67.96, and making no allowance for interest paid on said note, or for interest on said account, was allowed to the said Thompson, when, in fact, as the said Craft saith, he never received any portion thereof from the said Thompson, or in any other way, but the whole amount of said note was received by the said Thompson and for his own benefit; that at said hearing before said referees the said Thompson claimed to be allowed the sum of $500 on account of a certain other promissory

note executed by the said Thompson, and the said Craft as his surety, to the Dartmouth National Bank, on or about the 22d day of July, 1867, for the sum of $500, and that, through the inadvertence, misapprehension, mistake, or undue bias or partiality of said referees, the said sum of $500 was allowed to the said Thompson, when, as the said Craft saith, in fact, he, the said Craft, never received the same or any portion thereof from the said Thompson, or in any other way, but the said Thompson received the whole amount of said note for his own benefit; that at said hearing the said Thompson was aided and assisted by counsel learned in the law, but that he, the said Craft, had no legal counsel, and was subject to great detriment and embarrassment in consequence of not having such aid; that, in consequence of the loss of his said memorandum book, he was unable to lay before said referees the full evidence of the various items of payments made and money received by him on account of said arrangement between the said Thompson and himself, and which he verily believes he can now do, and which would entirely change the said award.

He therefore prays that said award be annulled, vacated, and set aside, and the said note be decreed to be delivered by the said Thompson to said Craft, and the said submission revoked or recommitted to said referees, or such further order made as may be just and proper; and that said Noble Thompson and his agents be enjoined from setting up, making, or prosecuting any claim under or by virtue of said award or said note, or commencing or prosecuting any suit or suits on account of the same, and for such other and further relief as may be just.

To this bill the defendant filed his demurrer, as follows:

" The said defendant says the plaintiff is not entitled upon said bill to the relief prayed for, because the defendant says:

" 1. That the plaintiff has not alleged in his said bill any such inadvertence, misapprehension, mistake, undue bias, or partiality on the part of the referees named in said bill, as entitle him to the relief prayed for, or to any relief in this proceeding; that the only material and substantive ground alleged in said bill for the relief prayed for is, that said referees were misled by false evidence, and misjudged as to the weight of evidence.

" 2. That it is not shown or even pretended, by any particulars stated in said bill, that said referees were guilty of fraud, or that they made any mistake other than misjudging as to the weight of the testimony.

" 3. That the bill discloses no equity on the part of the plaintiff.

" 4. That the bill is in other respects uncertain, informal, and insufficient."

The questions of law raised by the demurrer were reserved.

*Blaisdell*, for the plaintiff.

*H. & G. A. Bingham*, for the defendant.

FOSTER, J. The bill sets forth that the award of the referees was obtained

(1) Through the inadvertence, misapprehension, mistake, or undue bias or partiality of the referees.

(2) By the wilful perjury of the defendant.

(3) By reason of the misfortune of the plaintiff, who, having lost his memorandum book, was unable thereby to verify his own oath contradictory of the false testimony of the defendant.

(4) By reason of his embarrassment in consequence of not having the aid of counsel, his opponent being thus aided before the referees.

It is an universal and familiar rule, that a demurrer necessarily admits the truth of the facts stated in the bill, so far as they are relevant and are well pleaded. Story's Eq. Pl., sec. 452 ; 1 Daniell Ch. Pl. and Pr., *599.

By the terms of the rule, it is to be observed that the confession by demurrer is confined to those matters *which are well pleaded,* i. e., matters of fact. 1 Daniell *601. It does not, therefore, admit any matters of law which are suggested in the bill, or inferred from the facts stated ; for, strictly speaking, arguments, or inferences, or matters of law ought not to be stated in pleading, although there is sometimes occasion to make mention of them for the convenience or intelligibility of the matter of fact.

In this case, the allegation of the bill, that the award was obtained through the inadvertence, misapprehension, mistake, or undue bias or partiality of the referees, without any specification of the matters of fact from which such inadvertence, misapprehension, mistake, undue bias, or partiality is to be inferred, or upon which the allegation thereof is founded, is manifestly nothing more than an argument, or inference, or conclusion of law, from facts stated, or facts not stated ; and, in this respect, the matters alleged are not well pleaded, and are not to be taken as confessed by the demurrer.

And we infer that this general statement in the bill was intended merely as the expression of a conclusion of law, from the facts subsequently stated in the bill, namely, the result of the perjuries of the defendant specifically charged.

If the plaintiff means more than this (and whether he does or not the defendant and the court should be informed), he should state by his bill, not that the award was obtained by inadvertence, misapprehension, mistake, *or* bias, *or* partiality, but, distinctly, that it was obtained by means which should avail to set it aside, positively stated, and not in the alternative language employed, as in this bill, and accompanied by a specification of the facts which he relies upon as sustaining a definite charge.

There is in the bill no suggestion of fraud or misbehavior, nor any statement of facts upon which to found the charge of inadvertence, misapprehension, mistake, undue bias, or partiality on the part of the referees, other than that they were misled by false evidence, or that they misjudged as to the weight of the evidence.

In the absence of fraud or misbehavior by the referees, their general award will not be set aside, unless, having undertaken to decide strictly according to law, they have mistaken the law, or, in regard to matters of fact, there is a material mistake apparent upon the face of the award, or else a suggestion by the referees themselves of a mistake of fact not apparent upon the face of the award, but still, in their own view, material to the validity of the award; in which cases, although the mistake suggested by the arbitrators is made out only by extrinsic evidence, equity will grant relief. Subject to these qualifications, a general award cannot be impeached collaterally, or by evidence *aliunde*, for any mistake, inadvertence, or misapprehension with regard to the facts, or misjudgment concerning the weight of the evidence. Story's Eq. Jur., secs. 1454–1456; *Morgan* v. *Mather*, 2 Ves. Jr. *15; *Sanborn* v. *Murphy*, 50 N. H. 65.

Undue bias or partiality would be equivalent to fraud or misbehavior on the part of the arbitrators; but this is not so specifically alleged as (not being confessed by the demurrer) to entitle the plaintiff to relief for any such cause.

The third cause of demurrer assigned is, that " the bill discloses no equity on the part of the plaintiff."

The bill alleges that the defendant " falsely and knowingly, at the hearing before said referees, testified upon his oath " certain facts, specifically stated in the bill, with reference to the defendant's claim for money paid by him to one Alexander, and for other money paid by him to one Hyde; that, although the plaintiff denied the correctness of these statements, yet, having lost his memorandum book in which he had made entries of all payments and receipts by him on account of the arrangement between the defendant and himself, he was unable to furnish direct and positive evidence to contradict the defendant's statement; that since the hearing he has seen Alexander and Hyde, and been informed by them that they know the fact, and will testify that he, and not the defendant, paid to them the said sums of money.

These allegations, stated with distinctness and particularity, are well pleaded, and are confessed by the demurrer.

It appears, then, that the defendant supported his claim to recover these sums by his own perjury; and if would seem that the referees must have founded their award upon the credit given by them to the false testimony of the defendant.

Can it be said, then, that the bill discloses no equity ? and will the relief sought be denied, notwithstanding the fraud and perjury confessed?

The law favors an adjustment of controversies by arbitration, and equity, as well as the law, will be reluctant to set aside an award, and will only do so upon strong evidence, controlling the presumption which preëxists with regard to its validity, and the regularity of the proceedings whereby it was obtained. A court of equity will not interfere in behalf of a party whose defeat before referees is in any essential degree attributable to his own negligence.

And in the present case, the failure of the plaintiff to employ counsel, and the loss of his memorandum book, will not be considered as affording any ground whatever for relief, for it is to be presumed that the arbitrators would have granted time, if requested, to enable the plaintiff to employ counsel and to search for his book.

At law, a verdict will not be set aside on the ground of newly discovered evidence (as that of Alexander and Hyde in the present case), which goes only to impeach the credit or character of a witness. " Nor, it is said (certainly, except in rare cases), if the evidence is material only to contradict witnesses sworn on the former trial, especially where their testimony operates unfavorably only by way of inference, and when other evidence is very strong in favor of the prevailing party. So the defendant, in a criminal case, is not entitled to a new trial on the ground of having discovered, since the trial, that the witnesses for the State, who had been for a long time subpœnaed, could be discredited by showing their reputation for veracity to be bad." Hilliard on New Trials 385, 386. And it is held that the court will not set aside a verdict obtained by perjury, unless the witness has been convicted of perjury, or has died since the trial, and his conviction thus rendered impossible. *Ibid* 388; *Dyche* v. *Patton*, 3 Jones's Eq. 332. But it is good cause for granting a new trial, that one of the witnesses of a party, in whose favor the verdict was, has been convicted of perjury in the cause upon his own confession. *G. F. M. Co.* v. *Mathes*, 5 N. H. 574; 2 Tidd's Prac. 907.

But the jurisdiction of a court of equity, especially under our statute, —Gen. Stats., ch. 190, sec. 1,—is very comprehensive; and in all cases of fraud, mistake, or accident, courts of equity may, in virtue of their general jurisdiction, interfere to set aside awards upon the same principles and for the same reasons which justify their interference in regard to other matters where there is no adequate remedy at law. 2 Story's Eq. Jur., sec. 1451; *Rand* v. *Redington*, 13 N. H. 76. And this court, by statute, " may grant writs of injunction whenever the same is necessary to prevent fraud or injustice." Gen. Stats., ch. 190, sec. 1; *Wingate* v. *Haywood*, 40 N. H. 437.

Equity will enjoin a judgment on the ground that there was a good defence, of which the defendant did not know at the time the judgment was rendered, and that he was entitled to pay the debt in depreciated notes, of which privilege it had been sought to deprive him by fraud and collusion. *Monroe* v. *Delavan*, 26 Barb. 16; Hilliard on New Trials 461.

Any fact which clearly proves it to be against conscience to execute a judgment at law, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will authorize a court of equity to interfere by injunction. Adams's Eq. *198, note 1, and cases cited; *ibid* 727, 728.

The English statute 9 and 10 Wm. III., ch. 15, sec. 1, provides

that awards may be set aside if "procured by corruption or *undue means*," which, says Prof. Parsons, "is held as only declaratory of the law as it was before;" and he adds,—"This rule rests, indeed, on the common principle that fraud vitiates and avoids every transaction." 2 Pars. Con. 213.

The compulsory arbitration law (as it is called) of Pennsylvania declares that an award can be set aside "only for misbehavior of the arbitrators in the course of the hearing, or where the award is obtained by corruption or *other undue means*." *Wynn* v. *Bellas*, 34 Pa. St. 163. The words "undue means," says Mr. Chitty, are capable of a very extensive construction. 2 Chitty's Gen. Prac. 117.

The principle is elementary and the authorities innumerable, that an award will be set aside for the corruption of the arbitrators, and it is impossible to furnish any reason why the same result should not follow if it clearly appears that the award was obtained by the corruption of the prevailing party, who has accomplished his success by imposition and fraud practised upon the arbitrators. Therefore it has been held, that where one of the parties has, by fraud, procured an award in his favor, a court of equity may afford relief, even after the award has been performed by the other party; as, where the arbitrators decided the cause upon the testimony of one of the parties, and it was made clearly to appear that he knowingly testified to that which was false. *Bulkley* v. *Starr*, 2 Day 552; Caldwell on Arb. 374, note 1.

Mr. Chief Justice SHAW, in *Boston Water Power Co.* v. *Gray*, 6 Met. 131, said,—"The class of cases in which the court will set aside an award, upon matter not arising out of the submission or award, is where there is some corruption, partiality, or misconduct on the part of the arbitrators, or some fraud or imposition on the part of the party attempting to set up the award, by means of which the arbitrators were deceived or misled. In neither of these cases is the result the deliberate and fair judgment of the judge chosen by the parties: the former is the result of prejudice, uninfluenced by law and fact; the latter may be a true judgment, but upon a case falsely imposed on them by the fraud of a party."

And in *Hardin* v. *Brown*, 27 Geo. 319, it is said that a mistake into which the arbitrators have been led by undue means, or into which they have been permitted to fall by the fraudulent concealment of the party or his agent, is a ground for setting aside an award at common law.

In *Emerson* v. *Udall*, 13 Vt. 484, Mr. Justice REDFIELD, with more reluctance and hesitation than principle or authority seem, in my judgment, to demand, reaches the same result in these words: "Partiality or corruption in the arbitrators, or fraud in the party obtaining the award, are grounds of defence exclusively of equitable cognizance"— (citing *Wills* v. *Maccarmick*, 2 Wils. 148; *Braddick* v. *Thompson*, 8 East 344). "The kind of fraud," he continues, "which it is necessary to prove upon a party prevailing before arbitrators, in order to justify a court of equity in setting aside the award, it is not important, perhaps, here to consider, beyond that which is proved in the present case.      *      *      *

"The party must, either by suggestion of falsehood or the suppression of truth, have presented to the arbitrators a state of facts in regard to the merits of the claim which were factitious, and which the party at the time believed to be such. It is questionable, even, how far such a case will justify a court of equity in setting aside the award. Some cases of good authority seem to justify such a course."

The following are among the cases sustaining the position that equity will interfere and set aside an award obtained by the fraud or misbehavior of one of the parties. *Allen* v. *Ranney*, 1 Conn. 571 ; *Brown* v. *Green*, 7 Conn. 542 ; *Duren* v. *Getchell*, 55 Me. 251 ; *Spurck* v. *Crook*, 19 Ill. 415 ; *Muldrow* v. *Norris*, 2 Cal. 74 ; *Peachy* v. *Ritchie*, 4 Cal. 207 ;—and see *Wingate* v. *Haywood*, 40 N. H. 437 ; *Elkins* v. *Page*, 45 N. H. 310 ; *George* v. *Johnson, ibid* 456 ; *Great Falls Manufacturing Co.* v. *Worster*, 45 N. H. 110 ; Adams's Eq. *192 ; Hilliard on New Trials 461 ; Hilliard on Inj. 291.

The present case is exhibited to us in this light: It is substantially alleged in the bill that the award was obtained by the false testimony of the defendant, who knowingly and wilfully deceived and defrauded the arbitrators, and misled them into making such an award as they would not have made if the defendant had not been guilty of misbehavior, corruption, fraud, and perjury.

The defendant's practical admission of the truth of the charge of false swearing, distinctly and particularly set forth in the bill, is equivalent to his conviction of perjury in the cause, upon the hearing before the referees. It was the language of Lord HARDWICKE, in *Sheffield* v. *The Dutchess of Buckinghamshire*, 1 Atk. 628, that " the admission of a fact by a party concerned, and who is most likely to know it, is stronger than if determined by a jury ; and facts are as properly concluded by an admission as by a trial." *Manufacturing Co.* v. *Mathes*, before cited ; 1 Story's Eq. Jur., sec. 184, note.

And however negligent the plaintiff may have been with regard to the non-employment of counsel, or the loss of his book, or the unskilful conduct of his cause, the defendant's perjury, sufficient in itself to contaminate and avoid the award, is unmixed with any negligence or fault of the plaintiff.

It would be a reproach upon the administration of equity if we should refuse to examine fully such charges as the plaintiff presents by his bill ; and we are clearly of the opinion that the defendant's third cause of demurrer cannot be sustained.

The demurrer is general to the whole bill, and there is a part of the bill as to which the defendant ought to put in an answer. The demurrer, therefore, must be overruled ; for, as a general rule, to which this case forms no exception, a demurrer bad in part is void *in toto*. 4 Bouv. Inst. 404 ; Story's Eq. Pl., sec. 443.

In view of any further proceedings in the cause, the plaintiff will observe the suggestions of the court with regard to the frame of the bill in respect of the indefinite charges of inadvertence, misconception, undue bias, or partiality on the part of the arbitrators.

*Demurrer overruled.*