# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2014-0536, <u>Bellevue Properties, Inc. v. Settlers' Tennis, Inc. & a.</u>, the court on July 26, 2016, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case.  The plaintiff, Bellevue Properties, Inc. (Bellevue), appeals, and defendant New Hampshire Department of Transportation (the State) and defendants, Settlers' Tennis, Inc., Settlers' R1, Inc., and 13 Green Street Properties, LLC (collectively referred to in this order as Settlers), cross-appeal, orders of the Superior Court (<u>Smukler</u>, J.) related to Bellevue's right to access and use a swimming pool and tennis courts located on property owned by Settlers.  We affirm.

I.  Background

The parties own property in "Settlers' Green," a mixed-use development that includes retail space, apartments that were once condominiums, the North Conway Grand Hotel, and the "Tennis Green Lot," on which there is an outdoor swimming pool and six tennis courts (four concrete and two clay).  For ease of reference we refer to the swimming pool and tennis courts as "the Tennis Green Lot amenities."  The Tennis Green Lot, which Settlers owns, is across the street from the "Hotel Property," which Bellevue has owned since 1999.

The Hotel Property comprises two lots, one on which the hotel is located and the other on which hotel parking is located.  According to Bellevue, and not apparently disputed by Settlers or the State, the hotel currently has 150 rooms and 50 privately-owned suites.  There are three swimming pools on the Hotel Property:  an indoor pool and two outdoor pools (the Hotel Property amenities).

The State owns lots that we refer to as the "Condominium Property."  In 1996, after the original developer of the Condominium Property had lost it to foreclosure, the State took the Condominium Property by eminent domain in order to build the North-South Road and the Conway Bypass.  When the State took the property, only 42 of a planned 168 condominiums had been built.  The State demolished 28 of the 42 condominiums and has since leased the remaining 14 residential units as apartments.  Thus, Settlers' Green currently has no condominium units.

For the past several years, the parties have disputed Bellevue's right to access and use the Tennis Green Lot amenities. In 2010, the trial court determined that the parties had abandoned the claimed contract that established Bellevue's alleged right to use those amenities. As a result, the trial court equitably distributed the recreational amenities at Settlers' Green, awarding Settlers the Tennis Green Lot amenities and awarding Bellevue the Hotel Property amenities.

In 2011, we reversed that decision in an unpublished order. We held that, to the extent that the trial court treated certain documents in the chain of title as "simple contracts instead of as documents creating a servitude, [it] erred." We ruled that those documents reserved to Bellevue "a property right in the nature of an easement, for the use of and access to the Tennis Green Lot by the owner of the Hotel Property." We also concluded that the deeds of record demonstrated that this property right was conveyed to Bellevue's predecessors-in-interest. We remanded the case to the trial court "to consider whether Bellevue's easement-like property right was abandoned or otherwise extinguished."

On remand, in an April 2012 order, the trial court denied summary judgment to Bellevue and granted summary judgment to Settlers on Settlers' claim that Bellevue's easement should be extinguished under the impossibility of purpose doctrine. In that order, the trial court also granted Bellevue's motion for an evidentiary hearing on damages. Before the evidentiary hearing occurred, the court decided that cumulative evidence could not be introduced at the hearing, but that the court would, instead, take judicial notice of the prior record established in the 2010 proceedings. The court also denied most of the numerous motions in limine filed by the parties in advance of the damages hearing.

The damages hearing was held in May 2014. In a June 2014 order, the trial court awarded damages to Bellevue based upon the difference in value of the Hotel Property both with the easement to use and access the Tennis Green Lot amenities and without it. Based upon Bellevue's "limited" evidence relevant to that measure, the trial court awarded Bellevue $44,000 in damages to compensate for the loss of its easement-like right.

The instant appeal and cross-appeals concern the trial court proceedings on remand. Specifically, Bellevue appeals the trial court's order on summary judgment, the damage award, certain of the trial court's evidentiary decisions during the damages hearing, and its denial of Bellevue's request for attorney's fees. The State and Settlers have both filed cross-appeals challenging the trial court's decision to award any damages to Bellevue.

2

II.  Analysis

    A.  Termination of Bellevue's Easement

In its ruling on the parties' cross-motions for summary judgment, the trial court determined that Bellevue's easement "must be terminated" pursuant to the "impossibility of purpose" doctrine.  See Restatement (Third) of Property (Servitudes) § 7.10 (2000) (setting forth the impossibility of purpose doctrine); see also Boissy v. Chevion, 162 N.H. 388, 393 (2011) (adopting the doctrine).  Under the impossibility of purpose doctrine, "[w]hen a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created," and modification of the servitude "is not practicable, or would not be effective, a court may terminate the servitude."  Restatement (Third) of Property (Servitudes), supra § 7.10(1), at 394.  The impossibility of purpose doctrine is "designed to eliminate meaningless burdens on land and is based on the notion that parties that create an easement for a specific purpose intend the servitude to expire upon cessation of that purpose."  Boissy, 162 N.H. at 394 (quotation omitted).

Inquiry in an impossibility of purpose case "begins with determining the particular purpose of the easement in question."  Id. (quotation omitted).  "A provision in the easement instrument often indicates the parties' intent in this regard.  When an easement purpose provision is ambiguous, courts examine the surrounding circumstances to ascertain the parties' intent and tend to favor the grantee with a broad interpretation."  J.W. Bruce & J.W. Ely, Jr., The Law of Easements and Licenses in Land § 10:8, at 10-17 to 10-18 (2011).  "Next, one must decide whether the contemplated purpose still exists.  If not, the easement is considered to have expired."  Boissy, 162 N.H. at 394 (quotation omitted).

Examining a 1987 declaration executed by the original developer (the 1987 Declaration), and a 1986 "AMENITY AGREEMENT" between the original developer and the entity to which the original developer conveyed the Condominium Property (the 1986 Amenity Agreement), the trial court determined that "the purpose of the easement was to create an equally-shared property right to access the amenities on the Tennis Green Lot while simultaneously assigning equal obligations to maintain the same."  The trial court found that underlying this purpose was the expectation that "[t]he condominium owners . . . [would] be roughly equivalent to the hotel occupants in number and desired use."  However, the court found, "the condominiums never reached the expected size envisioned by the creators of the rights and obligations tied to the recreation amenities," because of "the economic downturn in the 1990s and the State's taking by eminent domain."  Thus, the court concluded, "[w]ithout nearly the same number of condominium units and hotel rooms, it is impossible" for the Hotel Property owner (Bellevue) and the

now non-existent condominium owners "to take on equivalent use of the amenities and equivalent maintenance." Accordingly, because "[a]t this juncture, the only party that the easement serves is Bellevue," and because "[t]hat was never the intention of those who set out to create the property rights and obligations for the development's occupants," the trial court ruled that Bellevue's easement "must be terminated" under the impossibility of purpose doctrine.

We review the trial court's rulings on cross-motions for summary judgment under the following standard: "[W]e consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." Conant v. O'Meara, 167 N.H. 644, 648 (2015) (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." Id. (quotation omitted). "We review the trial court's application of the law to the facts de novo." Id. (quotation omitted).

Although we apply our traditional summary judgment standard of review to the legal issues and to the determination of whether a genuine issue of material fact exists, we review the trial court's decision to grant equitable relief — in the form of extinguishing Bellevue's easement under the impossibility of purpose doctrine — for an unsustainable exercise of discretion. See id. at 648-49; see also CVA v. CLCA, 934 A.2d 669, 677 (N.J. Super. Ct. App. Div. 2007) (noting that a trial court "has a reservoir of equitable power to modify or terminate a servitude should changes occur in the future which would make it impossible as a practical matter to accomplish the purpose for which the easement was created"). In applying our unsustainable exercise of discretion standard of review to the trial court's decision to extinguish Bellevue's easement, we determine "whether the record establishes an objective basis sufficient to sustain the discretionary judgment made." State v. Lambert, 147 N.H. 295, 296 (2001). Under our unsustainable exercise of discretion standard, "[o]ur task is not to determine whether we would have found differently." Benoit v. Cerasaro, 169 N.H. ___, ___ (decided April 19, 2016) (quotation omitted). "Our only function on review is to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it." Id.

### 1. The 2011 Supreme Court Proceedings

Bellevue argues that the trial court's ruling that the purpose of the easement was to grant the Hotel Property owner and the condominium owners an "equally-shared" right of access to, and a corresponding "equal obligation[ ]" to maintain, the Tennis Green Lot amenities is contrary to our 2011 unpublished order. According to Bellevue, in that order, we conclusively

4

determined that the purpose of Bellevue's easement was to grant Bellevue a unilateral right to access the Tennis Green Lot to use the recreational amenities there.

Bellevue is mistaken. The question before us in the 2011 proceeding was whether "an easement to use the swimming pool and tennis courts" on the Tennis Green Lot had ever been "conveyed to Bellevue or its predecessors-in-interest." Given that question, we had no reason to, and did not, examine whether Bellevue had a corresponding obligation to maintain the Tennis Green Lot amenities or to analyze the nature of the easements granted to the State, as owner of the Condominium Property. Moreover in our 2011 order, we did not apply the impossibility of purpose doctrine, but instead remanded to the trial court to consider whether Bellevue's "easement-like property right" had been extinguished. Thus, in the 2011 proceedings, we were not asked to, and did not, decide the purpose of Bellevue's easement.

Bellevue also contends that, because we focused primarily upon the 1987 Declaration in our 2011 decision, that document is the only document relevant to determining the purpose of its easement. To the contrary, as we explained in our 2011 decision, when determining the scope of an easement created by written conveyance, "[o]ur task is to determine the parties' intent in light of the surrounding circumstances at the time the easement was granted." Arcidi v. Town of Rye, 150 N.H. 694, 701 (2004); see Bruce & Ely, supra § 10:8, at 10-18 (explaining that "[w]hen an easement purpose provision is ambiguous, courts examine the surrounding circumstances to ascertain the parties' intent"). In our 2011 decision, we examined the language of the 1987 Declaration "in light of the circumstances surrounding its execution," which included the 1986 Amenity Agreement.

### 2. Whether the Trial Court Properly Determined the Purpose of the Easement

Bellevue asserts that the trial court incorrectly determined that the purpose of the easement was, in Bellevue's words, "contingent upon or intertwined with" the condominium development. Bellevue contends that its "property right . . . is independent of any right of . . . other property interests at Settlers' Green." We review the trial court's interpretation of the 1986 Amenity Agreement and 1987 Declaration de novo. See Petition of Warden (State v. Roberts), 168 N.H. 9, 18 (2015) (explaining that "[w]e interpret written documents de novo"). We find no error in the trial court's interpretation of those documents. We agree with the trial court that the purpose of Bellevue's easement, as reflected in the 1986 Amenity Agreement and the 1987 Declaration, was to share equally with the condominium owners a right of access to, and a corresponding obligation to maintain, the Tennis Green Lot amenities.

The 1986 Amenity Agreement provided that "an integral part" of the original developer's plan for Settlers' Green "and in particular the hotel portion and the condominium development[,] is an amenity package including tennis courts, indoor and outdoor swimming pools, health club, . . . and such other amenities as may be added." The 1986 Amenity Agreement further provided that the "amenity package" was to be constructed and maintained "in an equitable manner by . . . its users, the hotel owner/operator and condominium owners."

The 1986 Amenity Agreement gave the Hotel Property owner and the condominium owners the equal right to use, and the corresponding equal obligation to maintain, all of the amenities in the amenity package, including those which were to be located on the Tennis Green Lot. Thus, under the 1986 Amenity Agreement, "to ensure that neither the hotel owner/operator or the condominium owners control [the amenity package] to the detriment of the other, all rights and obligations with respect to all amenities will be borne and shared equally between the hotel and the condominiums." Correspondingly, "to ensure that both the hotel guests and condominium owners have equal rights to use all amenities," the 1986 Amenity Agreement gave the Hotel Property owner and the condominium owners "undivided rights to use all amenities under a common and equally applicable standard of use."

To maintain equal control between the Hotel Property owner and the condominium owners, the 1986 Amenity Agreement created an "Amenity Association" to be governed by a board of directors — one-half of the board's members were to be elected by the Hotel Property owner and the other half were to be elected by the condominium owners. To maintain equal cost sharing, the agreement provided that net operating and maintenance costs would be assessed on a mandatory basis equally to the Hotel Property owner and the condominium owners.

Likewise, the 1987 Declaration provided that all of the amenities were to be shared equally by the guests of the planned hotel and the owners of the planned condominiums. Thus, the 1987 Declaration provided that the Hotel Property owner and the condominium owners "shall have a right and easement of enjoyment in and to the Recreational Areas," defined as all of the property owned by a new Settlers' Green Recreation Association (SGRA) "for the common use and enjoyment" of the Hotel Property owner and the condominium owners. Under the 1987 Declaration, the Hotel Property owner had the "right to allow its guests to use the Recreational Areas in accordance with the same rules and regulations applicable to" the condominium owners "at no additional cost to the Hotel."

Additionally, the 1987 Declaration provided that the cost of operating and maintaining the Tennis Green Lot amenities was to be borne equally by the Hotel Property owner and the condominium owners. Under the 1987

Declaration, operation and maintenance of the Tennis Green Lot amenities was the responsibility of the SGRA. The Hotel Property owner and the condominium owners were to have an equal number of votes in the SGRA. The SGRA's expenses were to be borne equally by the Hotel Property owner and the condominium owners.

The SGRA, like the Amenity Association before it, was to be governed by a board of directors, with half of the board's members appointed by the Hotel Property owner and half appointed by the condominium owners.

As the trial court aptly concluded, pursuant to the 1986 Amenity Agreement and the 1987 Declaration, the easement-like property interest granted to Bellevue to access and use the Tennis Green Lot amenities and its obligation to maintain those amenities "was not . . . a unilateral right." Rather,

> [t]he expected owners of the condominiums also shared this right to use and shared the obligation to maintain the Tennis Green Lot. The documents used to create the easement . . . make it clear that the individuals involved in creating, visualizing, and implementing a recreational area for the development designed it so that all would benefit from its use while all contributed to its care.

### 3. Whether the Trial Court Properly Relied upon Changed Circumstances to Extinguish Bellevue's Easement

Bellevue next asserts that, to the extent that the trial court relied upon Settlers' "business decision to pursue retail development instead of residential development" as the changed conditions sufficient to extinguish Bellevue's easement, the trial court erred. Cf. AKG Real Estate, LLC v. Kosterman, 717 N.W.2d 835, 846-47 (Wis. 2006) (rejecting Section 7.10(2) of the Restatement (Third) of Property (Servitudes) and adhering to the Wisconsin common law rule that the servient estate owner may not unilaterally relocate, modify, or terminate an express easement). However, the trial court did not rely upon Settlers' supposed decision to pursue retail development. Rather, it determined that "the economic downturn in the 1990s and the State's taking by eminent domain" caused the changed conditions that required extinguishing Bellevue's easement.

Bellevue also argues that "Settlers is foreclosed from contending that . . . extraneous forces," such as the State's taking of the Condominium Property by eminent domain in 1996, "are the legal basis for extinguishing [Bellevue's] property right under the doctrine of changed conditions" because it raised that argument in its motion to reconsider our 2011 order, which we denied. By denying Settlers' motion to reconsider, we expressed no opinion as to the validity of that argument. Indeed, in the 2011 proceeding, we expressly

7

declined to decide whether the easement was extinguished, choosing instead to remand that issue to the trial court to decide in the first instance.

Bellevue also contends that, because Settlers drafted the 1987 Declaration, Settlers "created the changed conditions upon which the trial court relied to terminate Bellevue's rights." We conclude that this argument does not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

### 4. Whether the Trial Court Erred by Not Considering Alternatives to Extinguishing the Easement

Bellevue argues that it was improper for the trial court to extinguish Bellevue's easement instead of modifying it. The impossibility of purpose doctrine "has traditionally been used to terminate servitudes, rather than to modify them." Restatement (Third) of Property (Servitudes), supra § 7.10 cmt. a, at 395. "[T]he less drastic step should be taken if modification would permit the servitude to continue to serve the purpose for which it was designed to an extent that is worthwhile." Restatement (Third) of Property (Servitudes), supra § 7.10 cmt. a, at 395. However, modification is proper "only if it does not materially increase the burden on the servient estate." Restatement (Third) of Property (Servitudes), supra § 7.10 cmt. a, at 395.

Here, the modifications that Bellevue proposes do not allow its easement to continue to serve the purpose for which it was designed. As discussed earlier, the purpose of the easement was for Bellevue to share equally with the condominium owners the right of access to, and the obligation to maintain, the Tennis Green Lot amenities. None of the modifications proposed by Bellevue serve that purpose. For instance, Bellevue argues that "the most efficient solution in this matter is to modify the easement to allow Bellevue to continue to access and use the Recreation Amenities, while eliminating any of Settlers' and the State's rights to use those Amenities and any financial obligations related thereto." However, that modification would be directly contrary to the purpose for which Bellevue's easement was created. Under these circumstances, we cannot conclude that the trial court unsustainably exercised its discretion by terminating, instead of modifying, Bellevue's easement under the impossibility of purpose doctrine.

Bellevue also contends that "[t]he continued benefit to Hotel guests precludes a finding that the Hotel's servitude on the Tennis Green Lot could no longer serve its purpose." Bellevue's argument, however, rests upon its assumption that the purpose of its easement was solely to grant it access to the Tennis Green Lot amenities. We have already rejected that assumption and, thus, necessarily reject Bellevue's argument based upon it.

B.  Damages

   1.  Whether the Fact that Bellevue's Easement was Reciprocal
   Precluded an Award of Damages

In its cross-appeal, Settlers argues that the trial court should not have awarded Bellevue any damages, in part, because "this case involves reciprocal easements."  Settlers asserts that, because Bellevue's easement was reciprocal in nature, the trial court "should have terminated all of the parties' obligations to make payments to the defunct [SGRA] to operate and maintain the amenities, while awarding Settlers exclusive right to the amenities on the [Tennis Green] Lot and awarding Bellevue the exclusive right to the amenities on the Hotel Lot."  In effect, Settlers argues that the trial court erred by not ordering the very relief it had ordered in 2010.

Bellevue responds that "the only issues properly before the trial court were whether Bellevue's easement-like property right was abandoned or otherwise extinguished."  (Quotation omitted.)  Bellevue explains that "[w]hether or not property rights of the other parties, Settlers and the State, were also extinguished was not an issue before the trial court on remand."

We agree with Bellevue on this point.  Because the only issue before the trial court was whether Bellevue's easement had been extinguished under the impossibility of purpose doctrine, the trial court did not address whether the easements granted to Settlers and the State continued to be viable.

Bellevue further contends that "there are no reciprocal rights at issue in this matter that preclude an award of damages to Bellevue" because "[b]oth Settlers and the State have long abandoned any reciprocal rights that they had . . . through their 'clear, unequivocal and decisive acts.'"  Bellevue argues that "[h]aving abandoned their rights to access and use the Tennis Green Lot and the Recreation Amenities, Settlers and the State are not entitled to argue herein that they have reciprocal rights that either require equitable treatment or that negate any award of damages to Bellevue for the termination of its property rights."

The trial court did not address Bellevue's argument that Settlers and the State have abandoned their reciprocal easements, and we decline to do so in the first instance.  We similarly decline to address whether, as Settlers argues, the 1986 Amenity Agreement and 1987 Declaration have been, or must be, terminated.  Although the parties appear to assume that the trial court terminated both the 1986 Amenity Agreement and the 1987 Declaration, we do not share their interpretation of the trial court's decision.  To the extent that Bellevue argues that its easement was "not contingent upon either the rights of any other party or the original Settlers' Green development plans," we note that we have already rejected that argument.

9

## 2.  The Measure of Damages

The trial court ruled that the proper measure of Bellevue's damages from the loss of its easement to access and use the Tennis Green Lot amenities "is based upon the fair market value of Bellevue's dominant estate before and after the easement was extinguished."  The trial court's ruling was based upon the Restatement (Third) of Property (Servitudes), which provides, in pertinent part, that when an easement is extinguished under the impossibility of purpose doctrine, damages "are measured by permanent loss of the remaining value of the servitude benefit."  Restatement (Third) of Property (Servitudes), supra § 8.3 cmt. h, at 505.  The trial court explained that in this case, "the 'servitude benefit' is the easement to enter onto and use the recreational amenities at the Tennis Green Lot."  (Quotation omitted.)  Thus, the trial court reasoned, "[t]he fair market value of the easement is the difference in the before and after values of Bellevue's dominant estate."  See Restatement (First) of Property (Servitudes) § 508 cmt. c, at 3097 (1944) (explaining that because appurtenant easements are "usable only in connection with the use and enjoyment of a dominant tenement" and "have value only in connection with that tenement[,] [t]heir value . . . for the purpose of measuring awards of compensation in eminent domain proceedings ordinarily is the reduction in market value of the dominant tenement with its appurtenant easements caused by the condemnation proceedings"); see also Town of Stamford v. Vuono, 143 A. 245, 249 (Conn. 1928) (ruling that "[w]hen an easement appurtenant to land is taken, the measure of damages is the depreciation in the market value of the dominant tenement"); cf. State v. 3M Nat'l Advertising Co., 139 N.H. 360, 362 (1995) (calculating damages in condemnation of fee simple rights in land based upon the difference in the fair market value of the property before and after the taking).

Bellevue does not challenge the trial court's reliance upon Restatement (Third) of Property (Servitudes), supra § 8.3 cmt. h, at 505.  Thus, Bellevue agrees with the Restatement (Third) of Property (Servitudes) that, because its easement was extinguished under the impossibility of purpose doctrine, its damages "are measured by permanent loss of the remaining value of the servitude benefit."  Restatement (Third) of Property (Servitudes), supra § 8.3 cmt. h, at 505.  Bellevue contends, however, that to measure its loss, the trial court should have relied upon the change in value of the servient estate (the Tennis Green Lot) instead of upon the change in value of the dominant estate (the Hotel Property).  Cf. SCI Cal. Funeral Services, Inc. v. Five Bridges Foundation, 137 Cal. Rptr. 3d. 693, 706-08 (Ct. App. 2012) (explaining, in dicta, that even if the defendant had preserved its argument that the only proper measure of damages for the loss of an appurtenant easement was the diminution in value to the dominant estate, the argument would fail because when a "trial court must value an asset for which there is no relevant, comparable market, it may consider any valuation methodology that is just, equitable, and not inconsistent with California law").  But cf. Redevelopment

Agency v. Tobriner, 264 Cal. Rptr. 481, 489, 490 (Ct. App. 1989) (ruling that when "the property interest taken is an easement appurtenant to a dominant estate," then the amount of just compensation "to which the condemnee is entitled is determined by the diminution, if any, in the value of the dominant estate to which the easement is appurtenant, caused by the loss of the easement" and explaining that "[o]nly the change in the value of the condemnee's property is relevant, not the effect of the condemnation on the value of the property taken").

We need not decide whether the change in value of the servient estate was the proper measure of damages in this case, because, even if it were, we agree with Settlers and the State that Bellevue failed to produce any evidence of that change in value. Bellevue's expert real estate appraiser opined only about the fair market value of the Tennis Green Lot as of January 2013 — after the trial court's 2012 order extinguishing Bellevue's easement. He offered no opinion as to the fair market value of the Tennis Green Lot before Bellevue's easement had been extinguished. Indeed, Bellevue's expert appraised the Tennis Green Lot as if it did not include the tennis courts and swimming pool. Although the record includes the tax assessment records for the Tennis Green Lot as of January 2013, that assessed value does not constitute reliable evidence of the lot's fair market value before Bellevue's easement was extinguished. Given the lack of evidence, we cannot find error in the trial court's failure to use the change in value of the Tennis Green Lot as the measure of Bellevue's damages.

### 3. The Amount of Damages

The trial court determined that Bellevue had provided only "limited" evidence pertinent to the difference in the value of its dominant estate before and after its easement was extinguished. Specifically, the court found that Bellevue proved damages only "to the extent of showing that the value of its dominant estate was diminished by its inability to offer 'in-house' tennis to prospective hotel guests." The trial court found that Bellevue's damages consisted of the difference between the amenities that Bellevue could offer its hotel guests before and after its easement was extinguished. The court found that before the easement was extinguished, "Bellevue advertised on the hotel website that it had 'in-house' tennis courts and a swimming pool." Because, after the easement was extinguished, Bellevue still had three swimming pools on its own property, the court found that "tennis is the only amenity" that Bellevue could no longer offer its hotel guests.

Based upon evidence from the first trial that only 8-10 hotel guests used the tennis courts per month and "the fact that the amenities were shared 50%," the trial court ruled that it was "appropriate to value Bellevue's property right at a figure that is less than the full cost of constructing four concrete and two clay tennis courts." Thus, although the cost of constructing four concrete

tennis courts and two clay tennis courts was approximately $105,000, the trial court awarded Bellevue only $44,000 — $40,000 to construct two clay tennis courts and $4,000 "in gravel and prep."

When, as in this case, "the law furnishes no precise legal measure for the recovery of damages, the amount to be awarded is largely discretionary." Miami Subs Corp. v. Murray Family Trust and Kenneth Dash Partnership, 142 N.H. 501, 517 (1997) (quotation omitted). We review the trial court's equitable award of damages under our unsustainable exercise of discretion standard. Clapp v. Goffstown Sch. Dist., 159 N.H. 206, 210 (2009).

In their cross-appeals, Settlers and the State contend that Bellevue is not entitled to any damages because Bellevue's expert failed to testify as to the fair market value of Bellevue's property both with the easement to access and use the Tennis Green Lot amenities and without it. The trial court disagreed with that assertion because it found that the value of Bellevue's easement "is greater than zero." We cannot fault the trial court for relying upon the "limited" evidence Bellevue provided.

In challenging the damage award, Bellevue first argues that the trial court erred when it "reduced Bellevue's damages based upon the fact that 'the amenities were shared 50%.'" We find no error in the reduction. As discussed previously, both the 1986 Amenity Agreement and 1987 Declaration made clear that Bellevue shared the Tennis Green Lot amenities equally with the condominium owners.

Bellevue next asserts that "[t]he trial court's deference to the long-abandoned rights of Settlers and the State is also unsustainable in that the trial court failed to take into account the extent to which Settlers enriched itself through its concerted interference with Bellevue's easement rights." According to Bellevue, extinguishing Bellevue's easement right "enriched Settlers in the amount of $2,425,800," and allowing Settlers to retain this benefit "would be unconscionable." Bellevue premises those assertions upon its claims that "the genesis of this entire dispute was Settlers' desire to free the Tennis Green Lot for commercial development," and that by pursuing commercial development, instead of residential development, Settlers took "unilateral action to terminate Bellevue's rights." The trial court, however, did not find any of those facts. Nor was it compelled to find them as a matter of law.

Bellevue similarly contends that the trial court erred because it failed to "first consider the circumstances that led to Bellevue's entitlement to damages," which Bellevue argues include the facts that, without the easement, Settlers will be able to use the Tennis Green Lot for commercial development, and that Settlers "provoked this litigation to eliminate both the encumbrance on its property and its obligations to contribute to expenses." Because the trial court did not consider the factors that Bellevue argues are mandatory, Bellevue

asks that we "vacate the trial court's damages award and award damages which fully, fairly and adequately compensate Bellevue for the loss of its property right." We decline Bellevue's invitation to vacate the trial court's damage award because it is premised upon Bellevue's view of the facts, which the trial court neither adopted nor was required by law to adopt.

Bellevue next argues that the trial court erred by failing to award Bellevue "past contributions owed by the State and Settlers" for the "maintenance and repair costs" associated with the Hotel Property amenities as well as "the value of the future contribution rights" owed by Settlers and the State. This argument is premised upon Bellevue's assumption that, when the trial court extinguished Bellevue's easement, it also "extinguished the . . . contribution rights created by the 1987 Declaration." (Italics omitted.)

However, as previously discussed, the trial court ruled only that Bellevue's easement to use the Tennis Green Lot amenities was extinguished. Thus, the trial court considered only whether Bellevue was entitled to damages for the loss of this specific property right. Although the trial court acknowledged that, in addition to the easement to use and access the Tennis Green Lot amenities, Bellevue had "an affirmative covenant for contribution by Settlers and the State for 50% of the maintenance and capital costs associated with [those] amenities," the trial court did not address the status of the covenant. (Quotation, ellipsis, and brackets omitted.)

Bellevue next asserts that the trial court erred in awarding only $44,000 instead of $589,930, which Bellevue argues represents the cost for constructing six new tennis courts, a new pool, "fencing, decking[,] and site work." Because the record supports the trial court's determination that tennis is the only advertised amenity that Bellevue can no longer offer its hotel guests because its easement was extinguished, we uphold that determination. As previously discussed, we also uphold the trial court's determination that it was proper to reduce Bellevue's damages because the amenities were to be shared equally. Given this record, and our deferential standard of review, we cannot say that the trial court unsustainably exercised its discretion by awarding Bellevue $44,000 instead of $589,930. As we previously explained, under our unsustainable exercise of discretion standard of review, our only function "is to determine whether a reasonable person could have reached the same decision as the trial court on the basis of the evidence before it." Benoit, 169 N.H. at ___.

Bellevue next contends that the trial court erred by not awarding it approximately $800,000, which Bellevue asserts represents the value of a new two-acre parcel on which Bellevue proposes the new tennis courts be built. Settlers counters that Bellevue is not entitled to the funds necessary to purchase a new two-acre site, in part, because Bellevue does not have a fee

13

simple interest in the Tennis Green Lot and, therefore, is not entitled to be reimbursed for that interest. We agree with Settlers.

Bellevue asserts that it is entitled to all of the above-described sums not only because they place it in the same position it would have been had the easement not been extinguished, but also because the State was allowed "to extinguish Bellevue's property right without compensation." Bellevue asserts that, because one of the changed conditions that led to the extinguishment of its easement was the State's taking of the Condominium Property, Bellevue is entitled to the sums as just compensation for that taking.

We disagree with Bellevue that, when the State took the Condominium Property by eminent domain, the State extinguished Bellevue's property right without just compensation. Bellevue never owned the Condominium Property and the taking by eminent domain of that property occurred three years before Bellevue owned the Hotel Property. Bellevue's assertion that the trial court's extinguishment of its easement under the impossibility of purpose doctrine constituted a taking entitling it to just compensation warrants no further discussion. See Vogel, 137 N.H. at 322.

### C. Evidentiary Decisions

Bellevue challenges the trial court's failure at the damages hearing to exclude: (1) evidence regarding the past use of the Tennis Green Lot amenities; (2) the testimony of Settlers' expert and other evidence regarding the condition of the Tennis Green Lot amenities and their depreciation in value; and (3) evidence that Bellevue's easement to use and access the Tennis Green Lot amenities was reciprocal in nature. "We review the trial court's decisions on the admissibility of evidence under an unsustainable exercise of discretion standard." Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 832 (2005).

### 1. Past Use of the Tennis Green Lot Amenities

Before the damages hearing, Bellevue sought to exclude evidence of the extent of the past use of the Tennis Green Lot amenities by hotel guests on the ground that such evidence was irrelevant. The trial court denied the motion on the ground that the evidence of the past use of the Tennis Green Lot amenities by hotel guests might be relevant to Bellevue's claim for damages based upon loss of business, a damages claim that Bellevue does not press on appeal. Although Bellevue now argues that the challenged evidence was "patently irrelevant" to its other damages claims, it does not contest the trial court's rationale for its ruling. Under these circumstances, we are not persuaded that the trial court's decision constituted an unsustainable exercise of discretion.

14

## 2. Depreciation in Value of the Tennis Green Lot Amenities

Before the damages hearing, Bellevue also moved to exclude the testimony of Settlers' expert on the grounds that his opinions that the Tennis Green Lot amenities "were unusable both in June of 2007 and in May of 2013," and that they were "90% depreciated" in value, were irrelevant, see N.H. R. Ev. 401, 402, and failed to meet the required threshold of reliability, see N.H. R. Ev. 702; see also Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); RSA 516:29-a (2007). (Quotations omitted.) Bellevue likewise moved to exclude other evidence of the condition and current value of the Tennis Green Lot amenities on the ground that such evidence was irrelevant. The trial court rejected Bellevue's arguments. On appeal, Bellevue challenges only the trial court's determination that the evidence about the condition and current value of the Tennis Green Lot amenities was relevant and admissible. Bellevue no longer argues that the expert's opinions upon those issues failed to meet the required threshold of reliability.

Bellevue contends that the evidence was irrelevant because: (1) Bellevue's easement was "a right to access and use" the Tennis Green Lot amenities "maintained and kept in good repair"; and (2) "Settlers prevented any maintenance from being performed since 2009." Bellevue argues that "it is the condition of the [Tennis Green Lot amenities] while under Bellevue's maintenance that controls, and not their condition in 2014 after maintenance has been prevented for five years." Bellevue's arguments, however, go to the weight to be afforded the challenged evidence, not to its admissibility. We defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. Boissy, 162 N.H. at 396. Our task on appeal is not to reweigh the evidence. Appeal of Phillips, 165 N.H. 226, 235 (2013).

## 3. Evidence that Bellevue's Easement was Reciprocal

At the hearing on the parties' motions in limine, Bellevue's attorney argued "that the reciprocal nature of the rights as asserted by [Settlers] has no relevance" because Settlers had not asserted "any right to damages for the extinguishment of any right that they may have had in the tennis green lot." Bellevue's attorney further asserted that even if Settlers had claimed such damages, Settlers would not be entitled to them because Settlers "sought to extinguish and then ultimately obtained a court order extinguishing the servitude," and because it was "going to profit from the termination of the rights." The trial court rejected those arguments, ruling that evidence that Bellevue's easement was reciprocal might "be relevant for purposes such as an offset to any damages that Bellevue is seeking."

Bellevue argues that the trial court erred by so ruling because "Settlers and the State both abandoned their right to access and use the Tennis Green

15

Lot . . . , through their 'clear, unequivocal and decisive acts.'" This argument also goes to the weight to be afforded the challenged evidence, not to its admissibility.  Because we defer to the trial court on such matters, see Boissy, 162 N.H. at 396, we uphold its determination that the evidence was relevant and admissible.

### D.  Attorney's Fees

Bellevue contends that the trial court erred by failing to award Bellevue its reasonable attorney's fees.  The general rule in this state is that each party to a lawsuit is responsible for payment of its own attorney's fees.  Clipper Affiliates v. Checovich, 138 N.H. 271, 277 (1994).  We have recognized exceptions to this general rule.  See id. at 278.  Bellevue relies upon two of them.  It argues that it is entitled to attorney's fees because, having established that Settlers acted in bad faith, Bellevue was "forced to seek judicial assistance to secure a clearly defined and established right."  Id. (quotation omitted).  Bellevue asserts that it is also entitled to attorney's fees because it was "forced to litigate against an opponent whose position is patently unreasonable."  Id. (quotation omitted).

We will not overturn the trial court's decision concerning attorney's fees absent an unsustainable exercise of discretion.  Grenier v. Barclay Square Commercial Condo. Owners' Assoc., 150 N.H. 111, 115 (2003).  We give "tremendous deference" to the trial court's decision on attorney's fees.  Daigle v. City of Portsmouth, 137 N.H. 572, 574 (1993) (quotation omitted).  We uphold the trial court's denial of attorney's fees to Bellevue because:  (1) Bellevue has failed to establish that Settlers acted in bad faith; and (2) we disagree that the position of either Settlers or the State has been "patently unreasonable."  Although Bellevue refers to the trial court's denial of "costs," it does not advance a separate appellate argument regarding that denial.

Affirmed.

DALIANIS, C.J., and KISSINGER, J., superior court justice, specially assigned under RSA 490:3, and VAUGHAN, J., retired superior court justice, specially assigned under RSA 490:3, concurred.

**Eileen Fox,**
**Clerk**

16